# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 375 | **DATE** | 3/10/2011 |
| **CASE TITLE** | Fifth Third Bank vs. Paderta | | |

**DOCKET ENTRY TEXT**

Fifth Third's motion for summary judgment [35] is granted. Status hearing set for 4/20/2011 @ 9:00 a.m.

■ [ For further details see text below.]

Docketing to mail notices.

# STATEMENT

Plaintiff Fifth Third Bank ("Fifth Third") brought this suit against John Paderta ("Paderta") to enforce a guaranty agreement entered into by Paderta for the benefit of Fifth Third. Specifically, Paderta, in his individual capacity, executed an agreement guaranteeing the obligations of Krahl Associates, Inc. ("Krahl") on various loans by Fifth Third. Fifth Third now moves for summary judgment (Doc. 35), seeking an order declaring Paderta is liable under that guaranty agreement, with damages to be determined in further proceedings. Paderta did not respond to Fifth Third's motion. For the reason set forth below, the Court grants Fifth Third's motion.

Because Paderta did not respond to Fifth Third's Local Rule 56.1 statement of material facts, the following facts are deemed admitted, and all citations are to Plaintiff's 56.1 statement (Doc. 35-2). *See* L.R. 56.1 ("All material facts set forth in the statement filed pursuant to section (b)(3)(C) will be deemed admitted unless controverted by the statement of the moving party.") Between May 1, 2004 and June 17, 2009, Paderta, acting on behalf of Krahl as its president, executed a series of three revolving note loan agreements to finance Krahl, one for $5,000,000 (dated May 1, 2004) and the other two for $6,000,000 (dated November 5, 2008 and June 17, 2009) ("the Notes"). (¶¶ 16-18.) As president of Krahl, he also executed, on September 17, 2007, a master agreement to Fifth Third, which contained cross-default language. (¶ 19.) In connection with these notes, on May 1, 2004, Paderta, as an individual, executed a Continuing Guaranty Agreement ("Guaranty"), in favor of Fifth Third. (¶ 20.)

Pursuant to the Guaranty, Paderta, signing in his individual capacity, "unconditionally, absolutely and irrevocably" guaranteed the payment of Krahl's obligations under the three notes and the master agreement, including, but not limited to, the "full and prompt performance when due (whether at maturity by acceleration or otherwise) of any and all loans, advances, indebtedness and each every other obligation or liability" of

Krahl owed Fifth Third. (¶¶ 22-23.) The Guaranty provides that it is "a continuing guaranty of payment, and not merely of collection, that shall remain in full force and effect until expressly terminated in writing by [Fifth Third]." (¶ 24.) According to the terms of the Guaranty, an event of default under one of the notes or the master agreement is an event of default under the Guaranty. (¶ 25.) When an event of default occurs, under the Guaranty, Fifth Third is permitted to "take any remedial action permitted by law or in equity" by the Notes or master agreement, "including demanding payment in full of all sums guaranteed hereby, plus any accrued interest or other expenses." (¶¶ 26, 59.) The Guaranty also states that Fifth Third is entitled to recover from Paderta its reasonable attorneys' fees and expenses related to the enforcement of Paderta's obligations to Fifth Third. (¶ 27.) Paderta also agreed in the Guaranty that "[n]o delay or omission on the part of [Fifth Third] to exercise any right or remedy shall be construed to be a waiver thereof . . . ." (¶ 28.) In the Guaranty, Paderta waived all legal and equitable defenses, counterclaims and off-sets arising from the "present or future lack of validity, binding effect or enforceability of the [Notes and master agreement] . . . ." (¶ 30.) He also waived defenses with regard to all "presentments, demands for performance or payment, notices of nonperformance . . . notieces of default or nonpayment . . . and all other notices or formalities to which [Paderta] may be entitled." (¶ 31.) On January 9, 2010, Krahl shut its doors and ceased its business operations. (¶ 58.)

Fifth Third identifies the following defaults by Krahl under the Notes and master agreement, among others. Krahl's tangible net worth has fallen below that which it was required to maintain under the note executed in 2009. (¶¶ 36-39.) That failure to maintain a minimum tangible net worth is an event of default under the 2009 note. (¶¶ 35-36.) Krahl's debt service coverage ratio has fallen below the required ratio under the 2009 note; that failure is also an event of default under the 2009 note. (¶¶ 35, 40-41.) A number of creditors have filed suit against Krahl relating to its ceasing of business operations, seeking to obtain judgments against Krahl's property, including property that Krahl had on deposit at Fifth Third. (¶ 44.) FBI agents also seized some of Krahl's property. (¶ 45.) Lawsuits filed against Krahl seeking to obtain judgment or other rights over Krahl's property, and the actual seizure of Krahl's property by the FBI is an event of default under the 2009 note. (¶¶ 43, 45.) Under the master agreement, default under one or more of the Notes is that results in the obligations under the Notes before they would otherwise be due is considered a cross-default, which is an event of default under the master agreement (¶ 54.) Fifth Third has met all of its obligations under the Guaranty. (¶ 61.) Krahl has not repaid its obligation under the Notes or the master agreement, nor has Paderta paid or performed pursuant to his obligations under the Guaranty. (¶ 63.)

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

The Guaranty states that it shall be interpreted under Illinois law (Doc. 1- 3 at 5), and neither party argues that Illinois law should not apply. Accordingly, the Court applies Illinois law. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009) (internal citation and quotation marks omitted) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies.") The Court applies the plain meaning of the terms of the Guaranty as a contract. *See Fid. Nat'l Title Ins. Co. v. Westhaven Props. P'ship*, 898 N.E.2d 1051, 1063 (Ill. App. Ct. 2007) ("[w]here the terms of a contract are

## STATEMENT

clear and unambiguous, they will be given their natural and ordinary meanings."). Under the terms of the Guaranty, the Guaranty makes Paderta personally responsible for payment of the Notes and any amounts under the master agreement if Krahl defaults. The defaults under the Notes and master agreement are events of default under the Guaranty, and triggered Fifth Third's remedies under the Guaranty, including seeking "all sums guaranteed hereby, plus any accrued interest or other expenses." (Doc. 1-3, §(5)(a).) Consequently, Paderta is liable for the outstanding balances on all three Notes and master agreement. Further, Fifth Third is entitled to its reasonable attorneys' fees and expenses related to the enforcement of Paderta's obligations to Fifth Third. (*Id.* at §(5)(b).)

By March 24, 2011, Fifth Third shall file papers proving its damages under the Guaranty. By April 7, 2011, Paderta shall file any papers challenging those damages. The parties shall appear for a status hearing on April 20, 2011 at 9:00a.m., and the Court will enter judgment pursuant to Rule 58 at that time. Within 10 days of entry of judgment, Fifth Third shall file a petition for attorneys' fees and related expenses.